UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA POWELL for
SHANE POWELL,

       Plaintiff,

vs.

Case No.: 03-CV-74916-DT

HON. PATRICK J. DUGGAN
MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant,
                               /

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion to Dismiss Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

**II.**    **REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Diana Powell's application for supplemental security income [SSI] on behalf of her son, Shane Powell. Plaintiff's mother signed the application for SSI benefits on October 12, 1998, alleging that he has been disabled since September 27, 1988. (TR 47-51). The Social Security Administration [SSA] denied benefits initially on November 25, 1998, and again on March 25, 1999, upon reconsideration. (TR 29-39). A de novo hearing was held on September 13, 1999, before Administrative Law Judge [ALJ] Alfred R. Tyminski. (TR 174-98). In a decision dated January

1

12, 2000, the ALJ found that Plaintiff was not disabled. (TR 18-23). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on August 26, 2003. (TR 4-5). The Plaintiff has commenced this action for judicial review.

On April 12, 2004, Defendant filed a "Motion to Dismiss Plaintiff's Complaint." On May 4, 2004, Plaintiff filed a "Response to Defendant's Motion to Dismiss Plaintiff's Complaint." On January 5, 2005, the undersigned recommended that "Defendant's Motion to Dismiss Plaintiff's Complaint," be denied. The Honorable Patrick J. Duggan concurred with this recommendation and entered an Order denying same on March 22, 2005. Thus, the case will proceed on the merits.

### A.     PLAINTIFF'S MOTHER'S TESTIMONY

Claimant's mother testified at the hearing. (TR 182-96). She stated that the claimant, her son Shane, was ten years old at the time of the hearing and would be eleven on September 27, 1999. (TR 182). She stated that she has two other children,[1] another boy and girl, ages fifteen and thirteen respectively. Id. She stated that they all live in the same home. Id. Further, she stated that her husband, their father, lives in the home and is employed full-time. (TR 183).

Claimant's mother testified that she also works as a teacher's aide for severely handicapped children at Bayarenac SXI. Id. However, she explained that although she has worked full-time for the previous year and a half, she is currently off because she is having surgery. Id. She stated that she works for a different school system than the one that Shane attends. (TR 189).

She stated that Shane just went back to school and during the summer he reportedly stayed in the house and either played Sega or slept. (TR 183-84). She stated that she worked three weeks

---

[1] She later indicated that she has a grown daughter as well, age twenty-seven. (TR 185).

during the summer, but during August she was at home with him. (TR 184). She explained that during the school year her schedule coincides with Shane's. (TR 184-85). She explained that when she worked during the summer, her twenty-seven year old daughter watched Shane. (TR 185).

Claimant's mother testified that he gets up between nine and ten in the morning and usually watches cartoons during the summer. Id. She stated that he usually only gets dressed if they have to go somewhere. Id. She stated that he cares for his personal needs and "takes a bath every night and does his own hair." Id. She stated that he is also able to use the bathroom himself as well as brush his teeth. (TR 186). She stated that her other children are not usually home and are busy with other activities, such as sports and babysitting. Id. She stated that Shane does not have friends that come over to watch television with him. Id. She stated that he does not go outside very often, either. Id.

She testified that Shane has his own room, but does not clean it. (TR 186-87). She stated that she tries to give him chores to do. (TR 187). She explained that he has animals (a dog, two cats, and two birds)[2] and she tries to get him to feed them, and although he does, it is a hassle. Id. She stated that she usually has to clean the bird cages, but once in a while she will get Shane to do it. Id. She stated that he does not do much in the afternoons. Id. She reiterated that he watches television most of the time and added that he has been going outside a little to play in the sand while the school across the street is being remodeled. (TR 188).

She stated that Shane will go to the store with her shopping and out to get an ice-cream. Id. However, she explained that if a lot of children are playing at the school across the street, he will

---

[2]At this point in the hearing, claimant indicated that he did not like his animals. (TR 187).

not go outside to play with them.  Id.  She stated that he does not do much with his father, either.  Id.  She stated that she tried to take him fishing, but she is "not very good with worms."  Id.

During the school year, Claimant's mother testified that her son leaves before she does.  (TR 189).  She explained that he gets on the bus approximately an hour before she has to leave.  Id.  She stated that she has to wake him up at six in the morning.  Id.  She explained that he does not get himself up in the morning.  Id.  She stated that he gets home from school at twenty after two in the afternoon.  Id.   She stated that she is home when he gets home and they give him very little homework.  Id.

When he gets home, she stated that he watches television.  (TR 189-90).  She stated that he eats when he gets home, has a regular dinner, and a snack before bed.  (TR 190).  She stated that he likes to help her cook and use the mixer.  Id.  She stated that he usually goes to bed at about eight-thirty in the evening.  Id.  She stated that sometimes he is angry when he gets home from school and she thinks it is maybe frustration from school or fighting with his older brother and sister.  (TR 194).

She stated that he is not involved in any sports.  Id.  She stated that she tried to get him involved, but he did not like it and he quit.  Id.  She stated that she tried to take him bowling, but he was afraid of the other children.  Id.

Claimant's mother testified that she has not talked to his teacher this year about the comments on Shane's school work specifically because they have to wait until the end of the month for a complete evaluation.  (TR 190-91).  She stated that Shane is in the sixth grade this year, but is only at a second grade spelling level, per his teacher's comments.  (TR 191).  She testified that the teacher indicated that he is a visual learner.  Id.  She indicated that he has a new teacher this

school year.[3]  (TR 192).  She stated that she spoke with her the first day of class to find out what teaching method she would be utilizing.  Id.

Claimant's mother indicated that he takes one and a half tablets of Ritalin three times a day; once in the morning, right after lunch, and when he gets home. (TR 193).  She stated that a qualified staff member in the school office gives Shane his medication in the morning.  Id.  She also stated that Shane takes sleeping medication at seven in the evening.  Id.  She stated that they are trying a new medication and his sleeping is improving a little.  Id.  She stated that she does not know what wakes him up, but she believes that he wakes up because he is scared.  Id.  She indicated that she sleeps in the same room and he wakes up yelling for her and then sometimes goes back to sleep, but when he cannot he watches television.  (TR 194).  She stated that this does not cause him to be drowsy the next day.  Id.

Claimant's mother testified that she filed for benefits on his behalf after talking with his neurologist and psychologist.  (TR 194-95).  She indicated that she does not think he will ever be able to function in a job due to his fears and "where he [would] be able to take care of himself."  (TR 195).  She stated that before she took him to the Delta Clinic, he would sometimes just beat his head on a wall or the floor.  Id.  She indicated when he was much younger he would even beat his head on the sidewalk outside.  Id.  She stated that the doctor at the time just thought it was a behavioral problem.  Id.  She stated that she could "talk him down" during these episodes, but no one else would talk to him.  Id.  She explained that other people would just yell at him.  Id.  She stated that

---

[3]Claimant's mother voiced dissatisfaction with his previous teacher. (TR 192). She explained that she does not think Shane learned anything last year because the teacher "was giving him A's because we had talked and she told me it was just a self-esteem thing that she was doing." Id.

he has done it since he started counseling, but has "mellowed out a little [] more." Id. She stated that she thinks the Ritalin has helped him "[t]o calm down a lot." Id.

### B. MEDICAL EVIDENCE & SCHOOL RECORDS

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence and school records would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[4]

### C. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "an attention deficit hyperactivity disorder [ADHD] and a learning disorder, which are 'severe,'" but that he does not meet the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (TR 20, 22). Thus, the ALJ concluded that Plaintiff is not entitled to childhood SSI disability benefits.

### D. ANALYSIS

Plaintiff contends that the Commissioner erred: (1) by not finding that Plaintiff functionally equaled any listing; and (2) by not diagnosing severe impairments of Dysthymic Disorder and General Anxiety Disorder.[5] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.[6] The matter is now ready for decision.

---

[4] See Subpart D, supra.

[5] Plaintiff's Motion for Summary Judgment and Brief filed June 29, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-9.

[6] Defendant's Motion for Summary Judgment and Brief filed August 22, 2005 (hereinafter "Defendant's Brief"), at pages 8-11.

**1.     Standard of Review**

The standard for granting childhood disability is more stringent subsequent to the passage of the Personal Responsibility and Work Opportunity Reconciliation Act in 1996.

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

In order to determine whether a claimant is disabled under this most recent legislation, the ALJ is now required to follow a three-step process outlined in the regulations promulgated under the Social Security Act. See 20 C.F.R. § 416.924. Specifically, to grant disability benefits, the ALJ must affirmatively determine the following: (1) that the child has not engaged in substantial gainful activity over the last twelve months; (2) that the child suffers from one or more severe impairments; and, lastly (3) that the child's impairment meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. §§ 416.924(a)-(d). At the third step, if the child does not have an impairment which medically meets or equals a listed impairment, or is functionally equal in severity to a listed impairment, the child will be found not disabled. 20 C.F.R. § 416.924(d).

Plaintiff's disability "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 CFR § 416.926a. "The domains we use are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 CFR § 416.926a(b)(1). 20 CFR § 416.926a provides, in pertinent part:

> (2) Marked limitation.
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."
> It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> (ii) If you have not attained age 3, we will generally find that you have a "marked" limitation if you are functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. (See paragraph (e)(4) of this section.)
> (iv) For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 CFR § 416.926a.

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard

v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). "Thus, the Court 'may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility.'" Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Trudell ex rel. Bushong v. Apfel, 130 F.Supp.2d 891, 895 (E.D.Mich. 2001).

### a.     Listings 112.04, 112.05, 112.06, or 112.11

Plaintiff argues that he meets one of the following Listings: 112.04, 112.05, 112.06, or 112.11.[7] Specifically, Plaintiff alleges that he does have a marked limitation in the area of concentration, persistence or pace and that coupled with the marked deficit that the ALJ found in the area of cognitive/communicative functioning, the aforementioned Listings are met.[8] (TR 21). He argues that testing in December 1997 showed difficulties with "attention, concentration, and impulsivity," as well as anxiety and lack of motivation.[9] (TR 19-20, 102). Further, Plaintiff alleges that the ALJ failed to discuss his Global Assessment of Functioning [GAF] score of 50.[10]

---

[7] Plaintiff's Brief at page 7.

[8] Plaintiff's Brief at pages 7-8.

[9] Plaintiff's Brief at pages 7-8.

[10] Plaintiff's Brief at page 8.

9

The ALJ did evaluate Plaintiff's functioning in the area of concentration, persistence or pace. (TR 21-22). Plaintiff concedes this and argues that the ALJ only refers to record that Plaintiff "does avoid regular class work (too difficult) but does try when pushed," and that he "was off-task much more often before medication."[11] (TR 74-75). Plaintiff then refers to the December 1997 test regarding Plaintiff's "difficulties modulating and monitoring his behavior resulting in impulsivity as well as having difficulties with the use of the attentional skill of vigilance. Lastly, there are some suggestions that under increased stimulation that Shane's performance declines."[12] (TR 100).

However, the ALJ found that a limitation in concentration, persistence or pace was less than marked following medication. (TR 21). The ALJ found that "school personnel and treating sources report improved behavior and concentration." (TR 21-22). Specifically, the ALJ noted that,

> [i]n February of 1998, a treating source noted that the claimant was less hyperactive and more attentive in school (Exhibit 1F, page 27). In September of 1998, a teacher reported that the claimant completed his assignments and followed directions (Exhibit 4F, page 27). Finally, in November of 1998, another teacher indicated that the claimant works well when he takes his medication. He is able to work without supervision and complete assignments in a timely fashion (Exhibit 4E).

(TR 22). As Defendant points out, the information that the ALJ relied upon is more recent than that on which the Plaintiff has relied.[13]

The undersigned notes, as does Defendant,[14] that in October 1998, Plaintiff's Psychologist, James Olsen, Ph.D., stated that he was "doing well on his medications. . . . When he went off of meds [sic] he has [illegible] with [b]ehavior management. When on meds [sic] he seems to do well."

---

[11]Plaintiff's Brief at pages 8-9.

[12]Plaintiff's Brief at page 9.

[13]Defendant's Brief at page 9.

[14]Id.

10

(TR 111; see also 133). Plaintiff's Psychiatrist's Medication Review Note reported in November 1998 that he was "not having any specific problems at school," although his mother complained regarding his behavior at night. (TR 134). The undersigned also notes that although he was not completing assignments or following directions in 1997, he was in 1998. (Compare TR 170 with 161). Although in 1999, his reading, vocabulary, and comprehension was below his grade level, there was not any mention of his ability to concentrate or maintain persistence or pace. (TR 158).

Furthermore, contrary to Plaintiff's assertions, the ALJ's failure to reference the GAF score is not error. "The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50764-65. Furthermore, the Sixth Circuit has held that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity] RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

### b. Diagnoses

Plaintiff's mother alleges that Plaintiff's diagnoses of Dysthymic and General Anxiety Disorder are evidence of his disability.[15] However, a diagnosis says nothing about the severity of an impairment, as in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988), the Court stated, "[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988) (diagnosable impairment not necessarily disabling)."

---

[15]Plaintiff's Brief at page 8.

11

As Defendant points out, Plaintiff "fails to articulate any actual limitations caused by" the disorders.[16] Plaintiff only argues that the ALJ failed to mention the diagnoses.[17] However, an ALJ is not required to discuss each piece of evidence. Black, 143 F.3d at 386. See also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).

Plaintiff fails to otherwise develop his argument regarding same. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Therefore, Plaintiff's argument is without merit.

After reviewing the objective evidence, the ALJ properly examined the six domains of functioning to determine whether Plaintiff had a marked impairment in any two or an extreme limitation in any one, which would entitle him to disability. 20 CFR § 416.924(a). (TR 20-22). The ALJ properly examined and explained each domain. Id. The ALJ concluded that the Plaintiff had a marked limitation in only one domain: cognitive/communicative functioning. Id.

For the aforementioned reasons, the ALJ had substantial evidence before him to conclude that Plaintiff does not have an impairment which medically meets or equals a listed impairment, or is functionally equal in severity to a listed impairment. 20 CFR § 416.924(d).

---

[16]Defendant's Brief at page 11. Defendant also notes that the ALJ relied on the opinion of a child psychiatrist finding only the following severe impairments: borderline intelligence and ADHD. Id. (citing Atterberry v. Sec'y of Health and Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

[17]Plaintiff's Brief at page 8.

12

### III. CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion to Dismiss Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

>   s/Wallace Capel, Jr.
>   **WALLACE CAPEL, JR.**
>   **UNITED STATES MAGISTRATE JUDGE**

**Dated:**   November 4, 2005

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: James A. Brunson, Assistant United States Attorney, 101 First Street, Suite 200, Bay City, Michigan 48708, Mikel E. Lupisella, 1121 N. Michigan Avenue, Saginaw, Michigan 48708.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

          s/James P. Peltier
          United States District Court
          Flint, Michigan 48502
          810-341-7850
          E-mail: pete_peltier@mied.uscourts.gov